UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

MARC-ANTHONY MCLEAN, on behalf of himself:
Individually, and on behalf of all others similarly :     Civil Action No.: 19-cv-864
situated,                                              :

                                      :

                            Plaintiffs,    :

     :

                 -against-              :

                                               :

CORNUCOPIA LOGISTICS, LLC,            :

                                               :

                                      :

                          Defendant.    :

-------------------------------------------------------------X

**DEFENDANT CORNUCOPIA LOGISTICS, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT AND FOR OTHER RELIEF**

LITCHFIELD CAVO LLP
420 Lexington Avenue
Suite 2104
New York, NY 10170

*Attorneys for Defendant*
*CORNUCOPIA LOGISTICS, LLC*

By:    Michael R. L'Homme, Esq.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      PRELIMINARY STATEMENT ....................................................................... 1

II.     FACTUAL BACKGROUND ............................................................................ 2

        A.  Company Background and Employee Arbitration Agreements...........................2

        B.  Description of Plaintiff's Lawful Compensation Plan…………………………….6

III.    LEGAL STANDARD ....................................................................................... 8

IV.     LEGAL ARGUMENT ...................................................................................... 9

        A.      POTENTIAL OPT-IN MEMBERS ARBITRATION AGREEMENTS PRECLUDE
                CONDITIONAL CERTIFICATION…………………………………………….........9

        B.      PLAINTIFF'S DECLARATION FALLS SHORT OF
                A MODEST SHOWING…………………………………………………………...12

        C.      THERE EXISTED NO COMMON POLICY……………………………………...17

        D.      EQUITABLE TOLLING AND PROPOSED
                PERIOD OF TIME IS BASELESS,
                OVERBROAD, AND OVER-INCLUSIVE………………………………………19

        E.      PLAINTIFF'S PROPOSED NOTICE AND
                OTHER RELIEF MUST BE MODIFIED
                SHOULD THE COURT GRANT ANY
                PART OF PLAINTIFF'S MOTION……..……………………………………….21

## TABLE OF AUTHORITIES

*Alvarez v. IBM Restaurants Inc.*,
839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012) ..................................................................21

*Arciello v. County of Nassau*,
No. 16 CV 3974, 2017 WL 4998074, at *6 (E.D.N.Y. Oct. 30, 2017)..............................20

*Benavides v. Serenity Spa NY Inc.*,
166 F. Supp. 3d 474, 481-482 (S.D.N.Y. 2016)............................................................12

*Boice v. M+W U.S., Inc.*,
130 F. Supp. 3d 677, 693 (N.D.N.Y. 2015)...................................................................9

*Contrera v. Langer,*
278 F.Supp.3d at 722 (S.D.N.Y 2017)........................................................................19

*Cowell v. Utopia Home Care*,
No. 14 Civ. 736 (LDW)(SIL), 2016 WL 4186976 at 6 (E.D.N.Y Aug. 8, 2016)................18

*Delijanin v. Wolfgang's Steakhouse Inc.*,
No. 18 Civ. 854 (RA) (KHP), 2019 WL 1760154 (S.D.N.Y April 22, 2019).......................13

*Egan et al v. Safeway Construction Enterprises, Inc. et al*,
No. 19-cv-02052 (RJD)(PK) (E.D.N.Y August 2, 2019)................................................23

*Eng-Hatcher v. Sprint Nextel Corp.*,
No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at 5 (S.D.N.Y. Nov. 13, 2009).......................12

*Epic Sys. Corp. v. Lewis*,
138 S. Ct. 1612, 200 L.Ed.2d 889 (2018)......................................................................9

*Errickson v. Paychex, Inc.,*
447 F. Supp. 3d 14, 27 (W.D.N.Y. 2020)....................................................................10

*Fasanelli v. Heartland Brewery, Inc.,*
516 F.Supp.2d at 324 (S.D.N.Y 2007).......................................................................23

*Feng v. Soy Sauce LLC, No. 15-CV-3058*,
2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016)......................................................17

*Fernandez v. Sharp Management Corp.*,
No. 16 Civ. 0551(JGK)(SN), 2016 WL 5940918 (S.D.N.Y Oct 13, 2016).........................13

*Guzman v. VLM, Inc.*,
No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007),
order clarified, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008)……………………………………9

*Heagney v. European Am. Bank*,
122 F.R.D. 125, 127 (E.D.N.Y. 1988)……………………………………………………………8

*Hoffmann–La Roche v. Sperling*,
493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)………………………………………20, 21

*Huertero-Morales v. Raguboy Corp.*,
No. 17 Civ. 2429(JCF), 2017 WL 4046337 (S.D.N.Y. March 12, 2017)………………………..14

*Iriarte v. Café 71 Inc.*,
No. 15 Civ. 3217(CM), 2015 WL 8900875, at 5-6 (S.D.N.Y December 11, 2015)……………..19

*Islam v. LX Avenue Bagels Inc*,
No. 18 Civ. 04895(RA)(RWL), 2019 WL 5198667, at 8 (S.D.N.Y September 30, 2019)……....19

*Jenkins v. TJX Companies Inc.*,
853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012)……………………………………………………9

*Karvaly v. eBay, Inc.*,
245 F.R.D. 71 (E.D.N.Y 2007) ……………………………………………………………………22

*Khan v. Airport Mgmt. Servs., LLC, No. 10 CIV 7735 NRB*,
2011 WL 5597371, at *3 (S.D.N.Y. Nov. 16, 2011) …………………………………………………9

*Lubas v. JLS Group, Inc.,*,
2020 WL 4210754, at *12 (E.D.N.Y. July 22, 2020)………………………………………………20

*Lujan v. Cabana Mgmt., Inc.*,
No. 10 Civ. 755 (ILG), 2011 WL 317984, at 9 (E.D.N.Y February 1, 2011)…………………...19

*McBeth v. Gabrielli Truck Sales, Ltd.*,
768 F.Supp.2d 396, 400 (E.D.N.Y. 2011)…………………………………………………...20, 21

*Mogollan v. La Abundancia Bakery & Restaurant, Inc.*,
 No. 18 Civ. 03202 (GBD)(SDA), 2019 WL 1512714 (S.D.N.Y April 8, 2019)………………..19

*Monzano-Moreno v. Libqual Fence, Co., Inc.*,
No. 18 Civ. 161 (MKB) (AKT), 2019 WL 1333264 (E.D.N.Y March 25, 2019)………………16

*Morales v. Plantworks, Inc.*,
No. 05 Civ. 2349, 2006 WL 278154, at 3 (S.D.N.Y. Feb. 2, 2006)……………………………..13

*Morangelli v. Chemed Corp.*,
No. 10 Civ. 0876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010)………………10

*Murrell et al v. Pro Custom et al*,
[ECF 63 and ECF 65] No. 19 Civ 02656 (KAM) (CLP) (E.D.N.Y. September 18, 2020)
…………………………………………………………………………………………..20, 22

*Myers v. Hertz Corp.*,
624 F.3d 537, 555 (2d Cir. 2010)……………………………………………………...…9, 13

*Placinta v. Grazina Pilka, Inc., No. 16-CV-4272-KAM-SJB*,
2018 WL 5024170, at *7 (E.D.N.Y. Oct. 5, 2018).......................................................17

*Polit v. Glob. Foods Int'l Corp.*,
2016 WL 632251 (S.D.N.Y. Feb 17, 2016)...............................................................11

*Prizmic v. Armour, Inc.*,
No. 05 Civ. 2503 (DLI) (MDG), 2006 WL 1662614 at 2 (E.D.N.Y. June 12, 2006)………9, 18

*Qi Zhang v. Bally Produce, Inc.*,
No. 12 Civ. 1045 (FB) (JMA), 2013 WL 1729274, at 4 (E.D.N.Y. Apr. 22, 2013)……………15

*Ramos v. PJJK Rest. Corp.*,
No. 15 Civ. 5672(PKC), 2016 WL 1106373 at 5 (S.D.N.Y. Mar. 10, 2016)……………………21

*Sanchez v. JMP Ventures, LLC*,
No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014)…………………………15

*Shahriar v. Smith & Wollensky Rest. Grp., Inc.*,
659 F.3d 234, 247 (2d Cir. 2011)....................................................................17

*Sharma v. Burberry Ltd.*,
52 F. Supp.3d 443 (E.D.N.Y 2014) ...................................................................22

*Taveras v. D & J Real Estate Mgmt. II, LLC*,
324 F.R.D. 39 (S.D.N.Y. 2018)……………………………………………………….9, 12

*Trinidad v. Pret A Manger (USA) Ltd.*,
962 F.Supp.2d at 564 (S.D.N.Y 2013)……………………………………………...23

*Valerio v. RNC Indus., LLC*,
314 F.R.D. 61, 76 (E.D.N.Y. 2016)……………………………………………….......23

*Vasquez v. Vitamin Shoppe Indus.*,
No. 10 Civ. 8820, 2011 WL 2693712, at 3 (S.D.N.Y. Jul. 11, 2011)……………………………9

*Vasto v. Credico (USA) LLC*,
No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at 16 (S.D.N.Y. May 5, 2016)……………………...19

*Zeledon v. Dimi Gyro LLC,*
No. 15 Civ. 7301(TPG)(DF), 2016 WL 6561404 at 11 (S.D.N.Y. Oct. 13, 2016)……………...17

Defendant Cornucopia Logistics, LLC ("Cornucopia"), by and through its attorneys, Litchfield Cavo LLP, submit the following Memorandum of Law in opposition to Plaintiff's Motion for Conditional Certification and other relief.

## I.   **PRELIMINARY STATEMENT**

This FLSA Wage and Hour action involves a single individual, Marc-Anthony McLean (hereinafter, "Plaintiff"), a former delivery driver employee of Cornucopia. Although Plaintiff acknowledged the validity of an Arbitration Agreement he signed upon accepting employment with Cornucopia and agreed to arbitrate his claims before the American Arbitration Association ("AAA"), due to a fee and payment issue between Cornucopia and AAA, the arbitration did not take place as scheduled and Plaintiff's case proceeded in this Court. However, since then, Cornucopia has rectified its business relationship with AAA and has been expressly reinstated as a member, thereby rendering not only Plaintiff's Arbitration Agreement, but all Cornucopia employees' Arbitration Agreements - including Plaintiff's entire collective of proposed putative opt-in plaintiffs - valid and enforceable.[1]

The undisputed existence of valid and enforceable Arbitration Agreements signed by all potential members of Plaintiff's proposed FLSA collective is dispositive of Plaintiff's request for conditional certification of his proposed FLSA collective, where none of the potential collective action members are "similarly situated" to plaintiff given the alternative forum to arbitrate any and all Federal or State wage and hour claims. Due to the foregoing, Plaintiff's instant Motion for Conditional Certification must be denied.

---

[1] At the time of filing, Defendant has requested Plaintiff stipulate to a stay of proceedings so that the parties may re-schedule arbitration before the AAA, who has expressly agreed to arbitrate Plaintiff McLean's claims. However, Plaintiff's counsel has refused to re-schedule the arbitration and instead, insists on litigating the case.

Should the Court consider Plaintiff's motion for conditional certification on the merits, Defendant states that the instant motion to conditionally certify an FLSA collective of delivery drivers amounts to nothing more than a "fishing expedition" by the lone individual plaintiff as it is based on pure speculation that there exists other similarly situated putative collective members who were allegedly subjected to the same common pay policy resulting in pay that amounted to less than the federal minimum wage of $7.25/ hr and/or a failure to pay overtime. Plaintiff cannot meet even the modest factual showing that similarly situated employees exist based upon 1) fatal defects in the factual assertions made in his Declaration and 2) the existence of valid and enforceable arbitration agreements.

## II.     FACTUAL BACKGROUND

### A.  Company Background and Employee Arbitration Agreements

Cornucopia Logistics, LLC is a logistics company located at 60 E 42nd Street, New York, NY 10165. *See*, Declaration of Ken Daniels ("Daniels Declr.") ¶ 4. On November 2, 2017, Cornucopia established its Bethpage, NY operation, located within Amazon, Inc.'s Fulfillment Center also at that location. *See*, *id.* at ¶ 7. Plaintiff was hired by Cornucopia on or about December 11, 2017 as a delivery driver, delivering packages for Amazon, Inc. and was assigned to work out of Cornucopia's 201 Grumman Rd. West, Bethpage, NY 11714. *See*, *id.*

Since Cornucopia started its business in July 2014, all Cornucopia employees, including delivery drivers like Plaintiff, signed an Arbitration Agreement where the employee agreed to arbitrate any claim or cause of action alleging improper or insufficient wages under the Fair Labor Standards Act ("FLSA") or any state or local wage and hour law, amongst other covered claims. *See*, *id.* at ¶ 8.

In connection with the distribution of employee handbooks and arbitration agreements to

2

delivery drivers, Cornucopia managers distributed the employee handbooks and arbitration agreements directly to all Cornucopia employees on or about each employee's date of hire. *See*, *id.* at ¶ 10. During the time Plaintiff was employed by the company, this policy was the same and handled on site at Cornucopia's operations within the Amazon Fulfillment Center in Bethpage, NY, where Plaintiff reported for work. *See*, *id.* It was and remains company policy that Cornucopia Managers are required to provide new hire packets and paperwork to all newly hired individuals for review and signature and then return the executed forms for filing at Cornucopia's main office. *See*, *id.* at ¶ 11.

On or about December 11, 2017 (Plaintiff's hire date), Cornucopia received a signed and executed copy of the Arbitration Agreement form (*Attachment "4" of the Employee Handbook*) from Plaintiff. *See*, *id.* at ¶ 12 and McLean Arbitration Agreement dated December 11, 2017 annexed thereto as **Exhibit 1**. In addition to the Arbitration Agreement form, Cornucopia's arbitration policy was found at pages 44 - 48 of the Cornucopia Logistics, LLC Employee Handbook, the receipt and review of which was signed and acknowledged by Plaintiff on December 11, 2017. *See, id.* at ¶ 13 and Employee Handbook annexed thereto as **Exhibit 2**; Signed Employee Acknowledgement Form dated December 11, 2017 annexed thereto as **Exhibit 3**.

Plaintiff alleges within his Declaration that at least five individuals and co-workers are "similarly situated" to him. He identifies these individuals as "Richard Bello," "Al Henry," "Steve Ribisi," "Shaun Sheeran," and "Damian Shorty." *See,* McLean Declr. annexed to Plaintiff's Motion for Conditional Certification at ¶ 10. However, each named individual also signed Cornucopia's Arbitration Agreement upon hiring with the exception of an individual Mr. McLean identifies as "Al Henry," to which Cornucopia has no record of employing anyone by

that name. *See,* Daniels Declr. at ¶¶ 15, 16, 18, 19, 20 and **Exhibits** 4, 5, 6, and 7 annexed thereto.

The language of the signed and executed Arbitration Agreements states the following in regard to employee FLSA and state or local law wage and hour claims and disputes:

> 3. Employee agrees that she/he will pursue to binding arbitration all "covered claims" as an individual and will not lead, join, or serve as a member of a class or group of persons bringing such "covered claims." Employer agrees that it will pursue to binding arbitration all "covered claims" as a single entity and will not lead, join, or serve as a member of a class or group of entities bringing such "covered claims."

> 4. The parties to this Agreement agree that "covered claims" include, but are not limited to, all claims that may arise as a result of the services Employee provides for Employer, including but not limited to all claims alleging discrimination, harassment, retaliation, and/or related to Employee's compensation for the services Employee performs for Employer, and specifically including any claim or cause of action alleging Employee is an employee of Employer and/or was improperly or insufficiently paid wages under the Fair Labor Standards Act ("FLSA") or any state or local wage and hour law, regardless of whether the covered claims arose or accrued prior or subsequent to Employee entering into this Agreement.

> 5. The parties to this Agreement further agree that "covered claims" include, but are not limited to, any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, any claim for damages related to the Employee's employment with Employer, rights arising out of alleged violations of New York and federal employment laws, including, but not limited to, the failure to provide all wages due upon discharge or termination, meal periods and rest periods, timely payment of all wages due semimonthly, payment of all vested vacation wages due, payment of all minimum, overtime and double time wages due, and payment of bonuses or benefits of any kind… the New York Labor Law… all amendments to such laws, and any other state, federal or local statute, law or ordinance, and any common law which the Employee now has,

4

owns or holds, or claims to have, own or hold, or which the Employee at any time heretofore had, owned or held, or claimed to have, own or hold against the Employer relating to any conduct occurring prior to and including the date of execution of this Agreement.

*See, id.* at ¶ 22 and **Exhibit 1**, Paragraphs 3, 4 and relevant excerpts of Paragraph 5.

Since starting its business in July 2014, every delivery driver hired and employed by Cornucopia has signed the company's Arbitration Agreement containing the above language. *See,* Daniels Declr. at ¶¶ 23, 25. Furthermore, in addition to the Arbitration Agreements and Handbook Acknowledgement forms referenced above, Plaintiff also received and signed certain additional documents and forms at the time of hire outlining to the Company's policies, including wage and hour policies. *See, id.* at ¶ 26 and **Exhibit 9** (Application), **Exhibit 10** (Notice of Employee Rights), **Exhibit 11** (Ack. Of Receipt and Review of Safe Harbor Policy), **Exhibit 12** (Notice and Acknowledgement of Pay Rate and Payday Under Section 195.1), **Exhibit 13** (Compensation Notice) and **Exhibit 14** (Interoffice Memorandum re: Pay Schedule Acknowledgement form) annexed thereto.

As stated within Paragraph 8 of the Arbitration Agreement, any claims will be administered by the American Arbitration Association ("AAA"). Contrary to Plaintiff's counsel's assertion within his Declaration in support of Plaintiff's motion for conditional certification, Cornucopia is currently in good standing with the AAA, having been expressly reinstated as of January 4, 2021 and as evidenced by a letter dated February 24, 2021 from AAA to Cornucopia's attorney, and Cornucopia is free and able to arbitrate any and all claims pursuant to this agreement with any of their past, present and future employees. *See, id.* at ¶ 24 and February 24, 2021 letter from AAA annexed thereto as **Exhibit 8**.) In fact, the AAA has expressly agreed to arbitrate Mr. McLean's claim.

B. <u>Description of Plaintiff's Lawful Compensation Plan</u>

Mr. McLean worked as a delivery driver for Cornucopia Logistics, LLC from December 2017 until July 15, 2018. *See, id.* at ¶ 27. Starting in January 16, 2016, all delivery drivers employed by Cornucopia Logistics, LLC were paid according to a lawfully implemented "Route Pay" program as described to each employee upon hiring and further acknowledged by each employee within their onboarding paperwork. *See, id.* at ¶ 27 and **Exhibits 11-14** annexed thereto. The Route Pay program continued as described below until February 2019, approximately six months after Mr. McLean's employment with Cornucopia ended. *See, id.* at ¶ 27.

Upon hiring, delivery drivers were advised that their compensation plan included a base daily route pay of $130, with various additional pay incentives ranging from $5 to $30 weekly for meeting various company goals. *See, id.* at ¶ 30(a). As a backup to the route pay, all delivery drivers (including Plaintiff) were required to punch in at the beginning of their workday and punch out at the conclusion of their workday, in order that that Cornucopia could track the actual hours each driver worked in strict accordance with state and federal laws. *See, id.* at ¶ 30(c); Declaration of Michael R. L'Homme, **Exhibit "C"**, Plaintiff's Punch Records. All drivers were ultimately paid at least their agreed upon hourly rate of compensation, although there was potential to earn a higher rate based upon efficient performance of their duties. *See,* Daniels Declr. at ¶ 30(c). If a driver's actual hours worked entitled the driver to less than the driver's daily route pay, the driver was paid the route pay, plus any additional compensation to which the driver was entitled for meeting various goals. *See, id.* In the event a delivery driver's actual hours worked exceeded 40 hours in a given week, Cornucopia then calculated that driver's overtime pay at one and one half times their agreed upon hourly rate according to applicable New York

state and federal law. *See, id.* Plaintiff's hourly rate on the date of hire (December 11, 2017) was $12 per hour and his overtime rate was $18 per hour.[2] *See, id.* Plaintiff's hourly and overtime rate did not change during the course of his employment from December 2017 through July 2018, at all times being compensated above the New York State mandated minimum wage of $11 per hour. *See, id.* Furthermore, all overtime paid to each delivery driver was included and conspicuously identified on that driver's paystub and earnings statement, as demonstrated below. *See, id.* at ¶ 30(d).

Review of Plaintiff's April 6, 2018 Earnings Statement (for the period of March 24, 2018 to March 30, 2018) demonstrates exactly how the route pay program was lawfully implemented to ensure complete compliance with applicable Federal and State wage and hour laws. This statement includes a gross pay amount of $728.92. A screen shot of the earnings details are copied below for reference. *See, id.* at ¶ 31 and Plaintiff's Bates No.: MCLEAN_000027 annexed thereto as **Exhibit 15** and original Earnings Statement and Paycheck Image from Defendant's production annexed thereto as **Exhibit 16.**

| Earnings Statement | | | | | MARK-ANTHONY MCLEAN |
|---|---|---|---|---|---|
| | Company: 0EH78 - CORNUCOPIA LOGISTICS | | | | |
| Pay Date: 04/06/2018 | | | | | Emp #: A1C8 |
| Period Start: 03/24/2018 | 60 E 42ND ST | | | | Dept: 338 - Driver Assoc Bethpage DNY4 |
| Period End: 03/30/2018 | NEW YORK, NY  10165 | | (212) 687-5145 | | Pay Basis: Hourly |
| Earnings | | Rate | Hours/Units | Current Period | Year to Date |
| Regular | | 0.00 | 0.00 | 0.00 | 2,815.00 |
| Overtime | | 0.00 | 0.00 | 0.00 | 712.50 |
| Incentive Bonus | | | | 0.00 | 60.00 |
| Miscellaneous addition | | | | 63.92 | 63.92 |
| Misc | | 0.00 | 0.00 | 0.00 | 96.43 |
| Route Pay | | | | 665.00 | 6,249.00 |
| Route Pay Hours | | 0.00 | 40.00 | 0.00 | 0.00 |
| Route Pay Overtime | | 0.00 | 9.25 | 0.00 | 0.00 |
| | Gross Pay | | 49.25 | 728.92 | 9,996.85 |

As demonstrated above, Plaintiff earned $665.00 in Route Pay for this pay period. As part of its normal payroll practice as set forth above, Cornucopia then reconciled this amount

---

[2] New York State minimum wage at this time was $11.00/hr for Long Island & Westchester employees. *See,* https://labor.ny.gov/workerprotection/laborstandards/workprot/minwage.shtm

against Plaintiff's hourly rate and time sheet showing the actual hours worked determined by his punch in/ punch out records. *See, id.* at ¶ 31. Using the above example, Plaintiff worked 40 hours of regular time, compensated at $12 per hour (above minimum wage in New York at the time) and 9.25 hours in overtime at the rate of $18 per hour during this pay period. *See, id.* Therefore, Plaintiff's route pay of $665.00 was adjusted up using his agreed upon pay rate to compensate him for the first 40 hours at $12 per hour (totaling $480) and 9.25 hours of overtime paid at $18 per hour (totaling $166.50) for a grand total of $646.50. *See, id.* However, as shown in the above earnings statement, Plaintiff in fact was compensated $728.92, which further exceeds not only New York minimum wage in 2018, but also what the company was obligated to pay Plaintiff based on his actual hours worked and agreed upon compensation of $12 per hour, resulting in a bonus of $82.42 for this pay period. *See, id.*

In line with Cornucopia's lawful compensation of delivery drivers, all delivery drivers were (and continue to be) required to clock-in and clock-out to capture all time worked to ensure strict compliance with state and federal law. *See, id.* at ¶ 32. Plaintiff's hours were logged each and every shift he worked and were considered when determining which portion of his compensation would be route pay, overtime (time and a half his agreed upon wage) and/or bonus and incentive pay if warranted. *See, id.* At no time did Mr. McLean bring any questions or complaints about his wages to the attention of Cornucopia management.  *See, id.* at ¶ 33.

## III.   LEGAL STANDARD

In order to obtain conditional certification, the court must find "some identifiable factual nexus which binds the named plaintiff and potential class members together as victims" of particular illegal practices. *Heagney v. European Am. Bank*, 122 F.R.D. 125, 127 (E.D.N.Y. 1988). Plaintiff must make a factual showing where "[m]ere allegations in the complaint are not

sufficient [.]" *Prizmic v. Armour, Inc.*, No. 05 Civ. 2503, 2006 WL 1662614, at 2 (E.D.N.Y. June 12, 2006)). At the very least, Plaintiff must make a "modest factual showing" to satisfy this burden. *Jenkins v. TJX Companies Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012); *Vasquez v. Vitamin Shoppe Indus.*, No. 10 Civ. 8820, 2011 WL 2693712, at 3 (S.D.N.Y. Jul. 11, 2011) ("conditional certification is not automatic"). In doing so, Plaintiff cannot rely on "unsupported assertions" to demonstrate that there was a "common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Taveras v. D & J Real Estate Mgmt. II, LLC*, 324 F.R.D. 39, 41 (S.D.N.Y. 2018); *Khan v. Airport Mgmt. Servs., LLC*, No. 10 Civ. 7735 (NRB), 2011 WL 5597371, at 3 (S.D.N.Y. Nov. 16, 2011) (stating court may review all parties' submissions).

In determining whether a plaintiff has met the burden of establishing that the proposed members of a putative collective action are similarly situated, district courts in this Circuit generally consider the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 693 (N.D.N.Y. 2015) (quotations omitted); *Guzman v. VLM, Inc.*, No. 07-CV-1126 (JG)(RER), 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007), order clarified, 2008 WL 597186 (E.D.N.Y. Mar. 2, 2008).

## IV.   LEGAL ARGUMENT

### A.  POTENTIAL OPT-IN MEMBERS' ARBITRATION AGREEMENTS PRECLUDE CONDITIONAL CERTIFICATION

The Supreme Court has soundly resolved the question of the enforceability of arbitration agreements waiving the right to collective action executed in the employment context. *See Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 200 L.Ed.2d 889 (2018). Such agreements, "as written," are

enforceable under the Federal Arbitration Act ("FAA"), including those that require employees to individually arbitrate claims brought under the FLSA. *Id.* at 1632, 1626.

Even assuming *arguendo* that Plaintiff's individual wage claims may conceivably proceed here despite his execution of a valid and enforceable arbitration agreement (which Defendant states it cannot) and an available and willing alternative forum to adjudicate his claims, he cannot obtain conditional certification of his proposed FLSA collective where all potential members executed valid and enforceable arbitration agreements. In fact, Plaintiff's prior agreement to arbitrate his claims before the AAA amounts to an express acknowledgement of the validity of said agreements. Faced with nearly identical circumstances, Courts in this Circuit have concluded that the "attendant procedural and legal issues unique to those who have signed Arbitration Agreements militate[s] against finding that this group of employees is similarly situated" to those who are not bound by an Arbitration Agreement. *See, Errickson v. Paychex, Inc.*, 447 F. Supp. 3d 14, 27 (W.D.N.Y. 2020). This Court, in *Morangelli v. Chemed Corp.*, No. 10 Civ. 0876 (BMC), 2010 WL 11622886, at *3 (E.D.N.Y. June 17, 2010), has similarly held that it would be a "disservice to judicial efficiency" to include those who signed arbitration agreement in collective, when they would be "subject to additional, prolonging motion practice which will likely disqualify them from the class."

It is undisputed that Plaintiff signed and executed a valid and enforceable arbitration agreement covering the exact claims at issue in this case relative to federal and state wage and hour law. *See,* **Exhibit 1**, **Exhibit 2** and **Exhibit 3** annexed to the Daniels Declr. Furthermore, all potential members of Plaintiff's proposed collective, including the individuals he names in his Declaration have executed identical arbitration agreements as plaintiff and thus are barred by the express language of the agreement from becoming members of the exact type of wage and hour

collective proposed by Plaintiff. *See,* Daniels Declr. at ¶¶ 15, 16, 18, 19, 20 23, 25 and **Exhibits 4, 5, 6, and 7** annexed thereto. The specific relevant language of the Arbitration Agreement states that "Employer agrees that it will pursue to binding arbitration all "covered claims" as a single entity and will not lead, join, or serve as a member of a class or group of entities bringing such "covered claims." *See, id.* at ¶ 22 and **Exhibit 1**, Paragraph 3. Plaintiff simply cannot proceed with a collective action where none of the potential collective members are legally viable opt-in plaintiffs due to their execution of valid and binding Arbitration Agreements with Cornucopia.

Finally, Plaintiff's instant motion for conditional certification appears to be based on the premise that he (incorrectly) assumes that Cornucopia was "permanently banned" from the AAA, thereby rendering an otherwise barred collective action valid. However, Plaintiff is mistaken and Cornucopia's express reinstatement with the AAA (and express agreement to administer the arbitration of Mr. McLean's claims raised in this lawsuit) renders all arbitration agreements valid and enforceable, warranting denial of Plaintiff's motion on this basis alone. *See,* Daniels Declr. at ¶ 24 and February 24, 2021 letter from AAA annexed thereto as **Exhibit 8**.) Plaintiff's citation to the case of *Polit v. Glob. Foods Int'l Corp.*, 2016 WL 632251 (S.D.N.Y. Feb 17, 2016) is inapposite to the issue of conditional certification and involves a factually distinct Order relative to an individual arbitration agreement and motion to compel. Plaintiff provides no precedent (as none exists) to support his contention that he should be granted conditional under the current circumstances and in light of the existence of an entire collective of individuals who have signed valid and binding arbitration agreements with a valid and willing forum to arbitrate.

To the extent Plaintiff is allowed to proceed against Cornucopia in this forum, this Court should at minimum reject his request for conditional certification of an FLSA collective. The

undisputed existence of valid and enforceable Arbitration Agreements nullifies Plaintiff's argument that there exists any potential collective members that may be similarly situated to him. These individuals cannot become part of the proposed collective based upon the express language within the agreements. To allow Plaintiff to conditionally certify the collective would not only violate the strong Federal presumption in favor of arbitration agreements, but also would improperly allow Plaintiff to use the Court's notice to recruit clients who may ultimately seek to pursue individual arbitration proceedings in accordance with the Arbitration Agreements. Absent a single individual who may be potentially "similarly situated" to Plaintiff, the motion for conditional certification must be denied.

### B.  PLAINTIFF'S DECLARATION FALLS SHORT OF A MODEST SHOWING

"When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees, courts have required details about these observations and conversations, such as where and when they occurred and the names of employee involved." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481-482 (S.D.N.Y. 2016); *Taveras*, 324 F.R.D. at 45 (S.D.N.Y. 2018) ("Courts in this Circuit often restrict the scope of a proposed collective or deny conditional certification because of a failure to identify other co-workers by name and title, provide the specifics of conversations with those employees, or note details of other employees' working conditions and hours."); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ), 2009 WL 7311383, at 5 (S.D.N.Y. Nov. 13, 2009) (denying conditional and class certification in an "off-the-clock" case where the plaintiff "attempt[ed] to impute her own limited experience" to the class and the plaintiff's evidence failed to justify the size and scope of the proposed class).

As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.' " *Myers*, 624 F.3d at 555; *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349, 2006 WL 278154, at 3 (S.D.N.Y. Feb. 2, 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005) ) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification); *Delijanin v. Wolfgang's Steakhouse Inc.*, No. 18 Civ. 854 (RA) (KHP), 2019 WL 1760154 (S.D.N.Y April 22, 2019) (All that plaintiffs have provided is a list of "unsupported assertions and conclusory allegations" that are "insufficient to conditionally certify a class").

Devoid of any details, paragraph 9 in Plaintiff's declaration states, "The way that Defendants paid me for my work was the same or similar to the way that they paid all of its non-managerial delivery drivers." *Fernandez v. Sharp Management Corp.*, No. 16 Civ. 0551(JGK)(SN), 2016 WL 5940918 (S.D.N.Y Oct 13, 2016) (denying conditional certification where plaintiffs' declarations "contain[ed] no non-conclusory allegations demonstrating that they [had] knowledge of how" other employees of defendants were paid). Here, nothing is provided as to the basis for such alleged sweeping knowledge and how Plaintiff could have known of other employees, and all of their pay structures, pay rates, clock in/ clock out times and overtime wages while working for Cornucopia.

Plaintiff then in paragraph 10 refers to five (5) individuals by name. First, as stated above, with the exception of "Al Henry," for whom Defendant has no record of employing, the remaining four individuals (Bello, Ribisi, Sheeran and Shorty) all executed valid arbitration agreements upon the start of their employment with Cornucopia. Second, these four identifiable individuals have not been named in the caption and plaintiff does not provide any declarations

from them. The basis for plaintiff's knowledge that these individuals are similarly-situated is his alleged personal discussions with and/or observation of their "duties." Plaintiff then makes the entirely unsupported assertion that these individuals were also paid a flat rate and not paid overtime. However, conspicuously absent from Plaintiff's Declaration is the fact that all delivery drivers were required to punch in and punch out in order for Cornucopia to track, and compensate, all employees for all hours works in accordance to state and federal law.

While in certain circumstances a single declaration based on personal observation can be sufficient to meet plaintiff's burden, merely reciting that there exists someone who is similarly situated is simply not the type of modest evidentiary showing required to conditionally certify a putative collective. In *Benevides, supra.,* for example, the court granted conditional certification because the single declaration was supported by documentary records. As the Court in *Huertero-Morales v. Raguboy Corp.*, No. 17 Civ. 2429(JCF), 2017 WL 4046337 (S.D.N.Y. March 12, 2017), noted, "While a single affidavit from a plaintiff can on its own merit conditional certification, conditional certification is not appropriate where a plaintiff "provides no details about [his] conversations [with other employees] and provides no affidavits from any other employees corroborating [his] claims." Although records or additional declarations are not necessarily required in every case to support a single declaration, it is warranted in this instance given that the motion is based on bare bone conclusory declaration concerning individuals who have executed valid arbitration agreements precluding their joinder to a collective action.

On its face, Paragraph 10 of Plaintiff's Deceleration merely amounts to "unsupported assertions and conclusory allegations" that are "insufficient to conditionally certify a class". Plaintiff states that the five workers had the same or similar duties as him but he does not offer any supportive evidence of this or even recite what their titles were, fails to accurately state that

14

all drivers were required to punch in and punch out at the end of every shift, fails to acknowledge that his own paystubs and earnings statements in fact show overtime wages being paid and fails to adequately explain his knowledge that these individuals were in fact not paid overtime or minimum wage. *Qi Zhang v. Bally Produce, Inc.*, No. 12 Civ. 1045 (FB) (JMA), 2013 WL 1729274, at 4 (E.D.N.Y. Apr. 22, 2013) ("refus[ing] to conditionally certify a collective action if plaintiff is unwilling (or unable) to offer any evidence that other [employees] had similar duties and responsibilities as plaintiff").

No details are offered for these other employees' schedules and hours except for the speculative statement that "the times they started and ended their work shifts were similar to mine." Plaintiff simply fails to indicate what the set number of hours for these individuals were and fails to account for the fact that these individuals were also subject to the "Route Pay" plan and similarly were required to punch in and punch out, thereby logging documenting their actual daily hours worked. There is not even an indication on the total number of hours these employees were required to work on a weekly basis. He further does not state what their work hours were during the relevant period. Without stating what their hours were or the total number of required work hours for them, Plaintiff alleges he had conversations about route pay and overtime, which amounts only to pure speculation. Moreover, Plaintiff does not indicate when he made these personal observations of the named individuals, reporting to and leaving work at the same or similar times. Similarly, he does not indicate where these conversations occurred, but indicates only that these alleged conversations took place. Tellingly, despite alleging to have these conversations, Plaintiff never complained or sought clarification regarding his compensation while employed by Cornucopia. *See, Sanchez v. JMP Ventures, LLC*, No. 13 Civ. 7264 (KBF), 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) (Details as to plaintiff's observations

and conversations, including when and where they took place, are critical, and without them, is

insufficient to conditionally certify); Daniels Declr. at ¶ 33.

The case of *Monzano-Moreno v. Libqual Fence, Co., Inc*., No. 18 Civ. 161 (MKB)

(AKT), 2019 WL 1333264 (E.D.N.Y March 25, 2019), is instructive. Magistrate Judge

Tomlinson discussed paragraphs 11 and 12 of the declaration submitted in support of plaintiff's

motion for conditional certification in the *Monzano-Morena* case, which are similar to

paragraphs 9 and 10 of Plaintiff's Declaration in this case. The plaintiff in *Monzano-Morena*

averred that there were at least four (4) other similarly-situated employees, identifying them by

name. Specifically, the Declaration stated that the identified individuals also worked in excess of

forty (40) hours per week for approximately $130.00 per day of work, but that they were not paid

for their over 40 hours per work week. The Court found that plaintiff in *Monzano-Morena*

offered no information adequate to show that the individuals referred to in his declaration were

all subjected to a common, unlawful compensation policy, and that it was an attempt "to broaden

his spartan factual allegations beyond himself as the existing Plaintiffs is not sufficiently specific

to make the requisite showing." Similarly, Plaintiff in the instant matter does not provide

sufficient details related to his observations and conversations as basis for his knowledge to

broaden the collective beyond either himself, or his job title as a delivery driver.  Here, the

information is even more scant because there is no indication as to the number of hours the five

persons worked on a given week, the fact that Plaintiff and these individuals were required to

punch in/ out and have their hours logged, or when or where his alleged "personal observations"

took place.

**C. THERE EXISTED NO COMMON POLICY**

Plaintiff fails to demonstrate that he will be able to satisfy the elements necessary to conditionally certify the collective where he cannot establish a common policy, let alone the existence of a policy that violates the law. "Collective actions under the FLSA encompass only FLSA violations." *Placinta v. Grazina Pilka, Inc.*, No. 16 Civ. 4272 (KAM)(SJB), 2018 WL 5024170, at 7 (E.D.N.Y. Oct. 5, 2018) *citing Feng v. Soy Sauce LLC*, No. 15 Civ. 3058(ENV)(LB), 2016 WL 1070813, at 4 (E.D.N.Y. Mar. 14, 2016); *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 247 (2d Cir. 2011) ).

As indicated in the declaration of Ken Daniels, Corporate Controller for Cornucopia, there existed no policy that an hourly wage earner only be paid a flat daily rate regardless of the amount of hours worked as alleged by Plaintiff. In fact, Plaintiff fails to include numerous critical aspects of how he was in fact compensated, including his omission of the fact that he (and all other delivery drivers) were required to punch in and out so that the company could ensure accurate and complete compensation for all hours worked. Daniels Declr. at ¶¶ 27-32.  As there existed no such policy of simple flat rate payment as erroneously alleged by Plaintiff, it is not possible that a "common" policy applicable to all delivery drivers alike, existed. *See, Zeledon v. Dimi Gyro LLC*, No. 15 Civ. 7301(TPG)(DF), 2016 WL 6561404, at 11 (S.D.N.Y. Oct. 13, 2016) (finding that the single sentence in plaintiff's affidavit stating that certain deliverymen "were paid approximately $5.65 per hour and rarely, if ever, worked above forty hours per week" was insufficient to show they were subjected to a common unlawful compensation policy).

In the same vein, conditional certification in this case will not promote judicial efficiency.  Even assuming the Court finds sufficient showing as to the existence of a common policy or plan in violation of the law, denial would still be required in light of the fact that

adjudication of these issues requires individualized inquiries as to the actual claims of Plaintiff against facts concerning each putative collective plaintiff. *Prizmic,* 2006 WL 1662614 at 2 (E.D.N.Y. June 12, 2006) (finding that in absence of sufficient showing by plaintiff, conditional certification would be 'a frivolous fishing expedition conducted by plaintiff at the employer's expense'); *Cowell v. Utopia Home Care*, No. 14 Civ. 736 (LDW)(SIL), 2016 WL 4186976 at 6 (E.D.N.Y Aug. 8, 2016) (denying collective certification because the determination of whether the putative plaintiff's time was compensable required "fact-intensive analysis of factors such as what tasks [plaintiff] performed, for how long, and how it related, or did not relate" to client needs.)

In order for the Court to establish that Cornucopia failed to pay legally owed overtime compensation and/or Federal minimum wage for the work described by the Plaintiff, the Court would be required to make individualized inquiries concerning each putative collective member's employment and hours worked. However, given the absence of a company-wide policy whereby delivery drivers were only paid a daily flat rate regardless of the amount of hours they worked, this inquiry is impossible to answer without individualized inquiry. As demonstrated by the Declaration of Ken Daniels and the voluminous time entry records (including timesheet and punch in and punch out records produced by Defendant to Plaintiff during discovery), Plaintiff conspicuously sets forth an inaccurate recitation of the alleged "common policy" by omitting various details of how delivery drivers were in fact compensated. Here, not only does Plaintiff fail to establish a common policy applicable to delivery drivers at Cornucopia, but he fails to account for the fact that the hours differ even between delivery drivers based on their individual routes and hours timed on the clock.

18

For all the reasons discussed heretofore, this case should, at most, remain as a single individual case.

## D. EQUITABLE TOLLING AND PROPOSED PERIOD OF TIME IS BASELESS, OVERBROAD, AND OVER-INCLUSIVE

Equitable tolling is appropriate "only in rare and exceptional circumstances ... where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Vasto v. Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 2658172, at 16 (S.D.N.Y. May 5, 2016) (Equitable tolling of the statute of limitations for members of the collective who have not yet opted into the collective denied where there was no showing that the case constituted rare and exceptional circumstance). In denying equitable tolling, limiting any challenges to timeliness on an individual basis, and authorizing a three-year notice period, the Court in *Mogollan v. La Abundancia Bakery & Restaurant, Inc.,* No. 18 Civ. 03202 (GBD)(SDA), 2019 WL 1512714 (S.D.N.Y April 8, 2019), found that there was, "no basis for making a ruling at this time that any current or future opt-in employees' claims must be equitably tolled given that there has been no showing that they have met the 'diligence' prong of the equitable tolling doctrine." Plaintiff has not even alleged that he was prevented in some extraordinary way from exercising his rights, and no showing that he has met the "diligence" prong of the equitable tolling doctrine. Therefore, should equitable tolling be permitted, at most, the Court should only consider tolling the statute of limitations on an individual case-by-case basis.

Furthermore, a three-year period where the plaintiff is only seeking conditional certification of his FLSA claims is both reasonable and appropriate in the Second Circuit. *See, e.g., Islam v. LX Avenue Bagels Inc*, No. 18 Civ. 04895(RA)(RWL), 2019 WL 5198667, at 8 (S.D.N.Y September 30, 2019) (denying a six-year period because it "would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does

19

not relate to any state law claims"); *Iriarte v. Café 71 Inc.*, No. 15 Civ. 3217(CM), 2015 WL 8900875, at 5-6 (S.D.N.Y December 11, 2015) (denying a six-year period for the same reason); *Lujan v. Cabana Mgmt., Inc.*, No. 10 Civ. 755 (ILG), 2011 WL 317984, at 9 (E.D.N.Y February 1, 2011) (denying a six-year period for the same reason); *Contrera v. Langer*, 278 F.Supp.3d at 722 (S.D.N.Y 2017) (finding that providing notices to plaintiffs who may not have a claim under the FLSA would serve only to confuse employees, rather than promote judicial efficiency as Plaintiff claims).

It is well-settled, and also the "trend" in both the Eastern and Southern Districts of New York, to approve only three-year notice periods. Authorizing notice for a period twice the length of the maximum FLSA limitations period would not serve the efficiency goal. On September 18, 2020, Magistrate Justice Cheryl Pollack of the Eastern District held that it is appropriate to send the Proposed Notice to all potential collective members extending back three years. See, *Murrell et al v. Pro Custom et al*, [ECF 63 and ECF 65], No. 19 Civ 02656 (KAM) (CLP) (E.D.N.Y. September 18, 2020). Authorizing notice for a time period twice the length of the maximum FLSA limitations period would not serve the efficiency goal articulated in *Hoffmann–La Roche,* 493 U.S. at 174, 110 S.Ct. 482. The rationale is, "to avoid the confusion caused by notifying plaintiffs who potentially have two disparate claims with different statutes of limitations, along with the inefficiency of providing notice to plaintiffs whose claims may well be time-barred." *See e.g., Lubas v. JLS Group, Inc.*, 2020 WL 4210754, at *12 (E.D.N.Y. July 22, 2020); *Arciello v. County of Nassau*, No. 16 CV 3974, 2017 WL 4998074, at *6 (E.D.N.Y. Oct. 30, 2017) (granting three-year notice period because "the instant motion seeks certification only with respect to [p]laintiffs' FLSA claims not their NYLL claims, and [p]laintiffs have not yet moved for class certification of their NYLL claims"); *McBeth v. Gabrielli Truck Sales, Ltd.*,

768 F.Supp.2d 396, 400 (E.D.N.Y. 2011) (three years); see also, *Ramos v. PJJK Rest. Corp.*, No. 15 Civ. 5672 (PKC), 2016 WL 1106373 at 5 (S.D.N.Y. Mar. 10, 2016) (only approving notice for three years as the plaintiffs "[did] not explain how efficiency or judicial economy are enhanced if the collective action notice includes a six-year limitations period for NYLL claims that have not received class certification").

Therefore, Plaintiff's request in the case at bar should be limited to 3 years prior to the date the conditional certification is granted. Plaintiff here cannot seek to include in the notice any former workers who were no longer Cornucopia employees as of at latest, February 2016, as that would seek to impermissibly include those whose FLSA claims have already been time barred. This is impermissible over-reaching, unreasonable, and lacks basis in fact and in law.

## E.  PLAINTIFF'S PROPOSED NOTICE AND OTHER RELIEF MUST BE MODIFIED SHOULD THE COURT GRANT ANY PART OF PLAINTIFF'S MOTION

Defendant objects to the proposed notice content on multiple levels, including the proposed scope and form, which must be modified to strike a fair balance. As noted above, plaintiff unreasonably seeks to broaden the scope of the period of time to, "any time within the 6 year period pre-dating the commencement of the action", and should be rejected. In the Eastern District, "the growing trend in this district appears to be limiting the notice period to three years." *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 587 (E.D.N.Y. 2012): *McBeth*, 768 F.Supp.2d at 400 (E.D.N.Y. 2011). It must be emphasized that the scope of notice must serve the judicial efficiency goal articulated by the Supreme Court in *Hoffman-La Roche, Inc. v. Sperling*, 110 S.Ct. 482 (1989).

Contrary to Plaintiff's request, it is not common or reasonable to permit notifications by email or text messaging. The Eastern District has recognized a genuine concern over disseminating notice by e-mail and text messaging, stating, "electronic communication

inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court. Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process. In addition, email messages could be forwarded to non-class members and posted to internet sites with great ease. *Sharma v. Burberry Ltd.*, 52 F. Supp.3d 443 (E.D.N.Y 2014) (denying plaintiff's request to disseminate the Notice via e-mail); *Karvaly v. eBay, Inc.*, 245 F.R.D. 71 (E.D.N.Y 2007); *Murrell et al v. Pro Custom et al*, No. 19 Civ 02656 (KAM) (CLP) (E.D.N.Y. September 18, 2020) (denying Plaintiff's request to send notices via text messaging). Plaintiff's request to e-mail and text message putative collective members is unnecessary, duplicative, and invasive of the privacy of putative collective members. There is no reason for Plaintiff to receive either the phone numbers or email addresses of putative collective members.

It is also common practice in this District to have opt-in plaintiffs send their consent forms to the Clerk of the Court rather than to plaintiff's counsel. *Sharma*, 52 F. Supp.3d 443 (E.D.N.Y 2014) (although plaintiff proposed that "individuals deciding to opt in forward their completed consent forms to his counsel, 'recent decisions have held that such a provision improperly discourages class members from seeking outside counsel and thus, courts have directed that Consent Forms be sent to the Clerk of the Court).

Plaintiff's 14 day disclosure request is not enough time, and should be extended to 30 days.  Moreover, Plaintiff seeks to overreach regarding the request for personal phone numbers (home and cell) of all putative collective members. Phone numbers are not necessary, intrusive to the putative member, and subject to abuse as it can be used as a marketing tactic to persuade putative members to opt-in.  Phone conversations are not monitored so there is no way of

knowing of the substance of the conversation. *See, Trinidad v. Pret A Manger (USA) Ltd.*, 962 F.Supp.2d at 564 (S.D.N.Y 2013) (Finding that it is unnecessary for Pret to provide the telephone numbers of prospective class members); *Fasanelli v. Heartland Brewery, Inc.,* 516 F.Supp.2d at 324 (S.D.N.Y 2007) (As plaintiff has provided no rationale to explain why he requires such extensive production of information including phone numbers).

Multiple notices only serves to encourage putative opt-in members to join, even when the notice does not apply to him. In a recent case, *Egan et al v. Safeway Construction Enterprises, Inc. et al*, No. 19-cv-02052 (RJD)(PK) (E.D.N.Y August 2, 2019), which the attorneys for the Plaintiff in the case at bar are currently involved in. In granting plaintiffs conditional certification in that case, the Court ruled that: "The Court permits Plaintiffs to send one reminder notice to each potential opt-in plaintiff, which shall include a disclaimer stating that the reminder is not an encouragement to join the collective. The parties are directed to agree on the specific language of the disclaimer."  Such discretionary finding, we believe, should be determined on a case-by-case basis. If in this case the Court deems that a reminder notice is appropriate, at the very least, a similar disclaimer should be prominently displayed in bold on such a reminder. With regard to plaintiff's request that defendants provide "proof of compliance" this again is unnecessary and over-burdensome.

The Court has the discretion to order the parties to meet-and-confer on the Notice if necessary. *Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 76 (E.D.N.Y. 2016). In light of the numerous objectionable items in the proposed notice, Defendant respectfully submits that the parties should at least be given an opportunity to confer and submit a joint proposed notice.

Based on the foregoing, Defendant respectfully requests this motion be denied in its entirety.

Dated:  New York, New York
        March 1, 2021

_____
Michael R. L'Homme (ML 5535)