```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MARK-ANTHONY MCLEAN, on behalf of
himself, individually, and on behalf of all others
similarly-situated,

                        Plaintiff,                              MEMORANDUM
                                                                AND OPINION
            -against-                                           CV 19-0864 (JS)(AYS)

CORNUCOPIA LOGISTICS, LLC,

                        Defendant.
-------------------------------------------------------------X
```

**SHIELDS, Magistrate Judge:**

Plaintiff, Mark-Anthony McLean ("Plaintiff" or "McLean"), commenced this action, on behalf of himself and others similarly situated, pursuant to the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 206, 207, and 216(b), New York Labor Law ("NYLL") Article 19 §§ 633, 652, NYLL Article 6 §§ 190 et seq., and 12 New York Codes, Rules and Regulations ("NYCRR") §§ 142-2.2, 142-2.4 and 137-1.7. Plaintiff seeks unpaid wages, overtime compensation and other damages. Named as defendant is Cornucopia Logistics, LLC, a corporate defendant ("Defendant" or "Cornucopia").

Presently before the court is Plaintiff's motion to have this matter proceed conditionally as a collective action pursuant to 29 U.S.C. § 216(b).[1] In the event that this Court grants Plaintiff's motion for conditional certification, Plaintiff seeks approval of a form of notice advising members of the collective of their right to opt-in to this action, and authorizing the sending and/or posting of notice of the collective action. Defendant opposes the motion in its entirety.

---

[1] Plaintiff also asserts various claims pursuant to the New York Labor Law that are not before the Court in the instant motion.

1

For the reasons set forth below, Plaintiff's motion to proceed as a conditional collective action is denied.

## BACKGROUND

I.   Facts Considered in the Context of this Motion

The facts summarized below are drawn from the submissions of the parties as described herein.  Plaintiff relies on the allegations set forth in his Complaint, (Docket Entry ("DE") [1]), as well as his own affidavit.  (DE [36]).  In response, Defendant submits the factual declaration of Ken Daniels ("Daniels"), the Corporate Controller for Cornucopia, (DE [40]), as well as documentary evidence that Defendant asserts contradict Plaintiff's factual affidavit.  (DE [60-1] – [60-16].)

II.  The Parties and the Factual Allegations of the Complaint

Cornucopia is a Long-Island based delivery company that delivers packages to corporate and private residences throughout Long Island, New York City, and the surrounding counties within New York.  (Compl. ¶¶ 2, 16.)  Cornucopia is a domestic corporation, organized and existing under the laws of the State of New York, with gross sales in excess of five hundred thousand dollars per year.  (Id. ¶¶ 10-11.)  Its principal address is located at 201 Grumman Road West, Bethpage, New York.  (Id. ¶ 10.)

Plaintiff was employed as a delivery driver by Cornucopia from December 2017 until July 15, 2018.  (Id. ¶ 17.)  Throughout his employment, Plaintiff's primary duties consisted of loading his truck each day, making deliveries to the locations Defendant provided – which were primarily on Long Island – carrying boxes from the truck to the delivery location by hand, and communicating with drivers and Defendant's dispatcher to ensure prompt delivery.  (Id. ¶ 18.) The majority of Plaintiff's deliveries were performed in a Dodge Caravan.  (Id. ¶ 19.)

Plaintiff typically worked five days per week, from 7:00 a.m. to 8:00 p.m., without a scheduled or uninterrupted meal break, for a total of sixty-five hours per week. (Id. ¶ 20.) Defendant occasionally paid Plaintiff an additional amount of compensation for arriving at work on time, working on the weekend, or completing his route on time. (Id.) This additional compensation ranged from $5.00 to $45.00 per day, regardless of the amount of hours that Plaintiff worked in a day or in a week. (Id.) At no point was Plaintiff provided overtime compensation for hours worked in excess of forty in a week. (Id. ¶ 21.)

Moreover, for some days of work, Defendant failed to pay Plaintiff at all. (Id. ¶ 22.) For example, during the week of June 16, 2018 through June 22, 2018, Plaintiff worked sixty-five hours over the course of five days. (Id. ¶ 23.) However, Defendant only compensated Plaintiff for three of the five days he worked, paying him $175.00 for one day and $140.00 each of the other two days. (Id.) Accordingly, Defendant paid Plaintiff a total of $455.00 for the foregoing work week, which amounts to a rate of $7.00 per hour for all hours worked. (Id.)

Cornucopia paid Plaintiff on a weekly basis. (Id. ¶ 24.) Plaintiff was never provided a wage statement with his weekly pay. (Id. ¶ 25.) Nor was Plaintiff ever provided with a wage notice at his time of hiring. (Id. ¶ 26.)

III.   Claims Alleged in the Complaint and the Proposed Collective

Plaintiff's first and second causes of action contained in the Complaint allege violations of the FLSA for Defendant's failure to pay overtime compensation and minimum wage. (Compl. ¶¶ 30-43.) Counts Three and Four of the Complaint allege parallel overtime and minimum wage violations pursuant to the New York Labor Law ("NYLL"). (Id. ¶¶ 44-55.) Plaintiff's fifth and sixth causes of action allege that Defendant failed to provide him with a wage notice at the time of hire, as well as wage statements every payday, in violation of the NYLL. (Id. ¶¶ 56-67.)

Finally, Count Seven of the Complaint alleges that Defendant failed to pay Plaintiff timely wages, in violation of the NYLL. (Id. ¶¶ 68-72.) Plaintiff seeks compensatory damages for himself and those who opt in to the collective action, as well as liquidated damages, attorney's fees, and the costs of this action.

Plaintiff seeks to pursue this matter as an FLSA collective action that includes all current and former delivery drivers employed by Cornucopia from February 13, 2013 to date. (Not. of Pl. Mot. for Conditional Collective Certification, DE [33], at 1.) Members of the proposed collective action are alleged to be subject to the same unlawful policy as Plaintiff in that they, like Plaintiff, worked hours for which they were not compensated in violation of the FLSA's overtime provisions. Defendant's conduct with respect to the improper payment of wages is alleged to be willful. (Compl. ¶ 15.) In furtherance of his request to proceed as a collective action, Plaintiff requests court-authorized notice be published to the putative collective action members to notify them of the pendency of this action, and of their rights under the FLSA. (DE [35-4].)

IV.   Plaintiff's Motion and Supporting Documentation

As noted, Plaintiff seeks conditional certification of this matter as an FLSA collective action, and to have notice of the pendency of this action (and the right to opt in) sent to all potential members of the proposed collective action. The individuals to whom notice is proposed to be sent are described as those current and former delivery drivers employed by Defendant Cornucopia Logistics, LLC as of February 13, 2013 to present. (DE [57-2].) In support of the motion, Plaintiff submits, as noted, his affidavit.

Plaintiff's affidavit states that he was employed by Defendant as a delivery driver from December 2017 to July 15, 2018, during which he was paid a flat compensation of $130.00 per

4

day, regardless of the number of hours worked, and that, for some days, he received no compensation at all.  (McLean Aff. ¶¶ 2, 6-7.)  Plaintiff further states that throughout his employment, he routinely worked sixty-five hours per week, without receiving overtime compensation for hours worked in excess of forty.  (Id. ¶¶ 4, 8.)  Plaintiff states that other non-managerial delivery drivers employed by Cornucopia were subject to the same compensation policy.  (Id. ¶¶ 9-10.)

V.       Defendant's Opposition

Defendant opposes Plaintiff's motion, arguing that Plaintiff is not similarly situated to members of the putative FLSA collective action and that it has no unlawful compensation policy.  (Def. Mem. of Law in Opp'n to Pl. Mot for Conditional Certification,  DE [41], at 9-18.)  Defendant also opposes Plaintiff's request to equitably toll the statute of limitations, Plaintiff's proposed notice of pendency, and Plaintiff's request for an order allowing him to send the proposed notice, as well as a reminder notice, via email and text message, with links to Plaintiff's counsel's website.  (Id. 19-23.)  In support of its position, Defendant relies on the declaration of its Corporate Controller, Ken Daniels, as well as documentary evidence.  (DE [40], [40-1]-[40-16].)

Having set forth the parties' positions and supporting documentation, the Court turns to the merits of the motion.

## DISCUSSION

I.       Conditional Collective Action Certification: Legal Principles

The FLSA imposes liability upon employers that violate the statute's minimum wage and overtime compensation provisions.  See 29 U.S.C. §§ 206-207.  Section 216(b) of that statute provides an employee with a private right of action to recover overtime compensation and/or

minimum wages on behalf of himself, as well as other similarly situated employees. Such similarly situated employees may become parties to an FLSA action upon giving consent in writing to become parties, which consent is filed in the court in which the action is brought. See 29 U.S.C. § 216(b); Valerio v. RNC Indus., LLC, 314 F.R.D. 61, 65 (E.D.N.Y. 2016).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective. See Mongiove v. Nate's Corp., No. 15-CV-1024, 2016 WL 590460, at * 1 (E.D.N.Y. Feb. 11, 2016). First, the court determines whether the proposed class members are similarly situated with respect to the alleged FLSA violations. See Myers v. Hertz, 624 F.3d 537, 554-55 (2d Cir. 2010); Wang v. Shun Lee Palace Rest., Inc., No. 17-CV-0840, 2018 WL 3155835, at *3 (S.D.N.Y. June 28, 2018); Jin v. Shanghai Original, Inc., No. 16-cv-5633, 2018 WL 1597389, at *5 (E.D.N.Y. Apr. 2, 2018); Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2007). If the court decides the similarity question in the affirmative, appropriate notice is sent and members of the collective may thereafter "opt-in" by consenting in writing to be bound by the result of the suit. See Sultonmurodov v. Mesivta of Long Beach, No. 15-CV-1654, 2015 WL 9273948, at *2 (E.D.N.Y. Dec. 17. 2015); Rubery, 569 F. Supp. 2d at 336; see also 29 U.S.C. § 216(b).

The second step, which typically occurs after the completion of discovery, requires the court to make renewed factual findings as to whether the class members are actually similarly situated. See Rosario v. Valentine Ave. Discount Store, Co., 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009). "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." Bifulco, 262 F.R.D. at 212 (quotations and citations omitted). In the event that they are not, "the court will decertify the

class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." Id. (quoting Rubery, 569 F. Supp. 2d at 336); see also Jin, 2018 WL 1597389, at *5.

The instant motion concerns only the first step, i.e., whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," Castillo v. Perfume Worldwide Inc., No. 17-2972, 2018 WL 1581975, at *3 (E.D.N.Y. Mar. 30, 2018) (quoting Bifulco, 262 F.R.D. at 212), and "plaintiffs need only make 'a modest factual showing sufficient to demonstrate that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013).

Importantly, the issue of "similarly situated" refers not to similarity of job duties, but to similarity in pay structure. Thus, courts in this district and elsewhere routinely reject attempts to limit certification based on alleged dissimilarity of job function. See, e.g., Ritz v. Mike Rory Corp., No. 12 CV 367, 2013 WL 1799974, at *2 (E.D.N.Y. Apr. 30, 2013) (rejecting limiting conditional class to bartenders and instead, including all tipped service workers in conditional class); Calderon v. King Umberto, Inc., 892 F. Supp. 2d 456, 464 (E.D.N.Y. 2012) (refusing to limit certification to positions held by named plaintiffs); Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007) (rejecting as frivolous defendant's argument that certification should be limited to duck feeders); Summa v. Hofstra Univ., 715 F. Supp. 2d 378, 391 (E.D.N.Y. 2010) (certifying employees despite varying positions and functions). Additionally, it is well-recognized that the burden at the conditional certification stage is so low

that Plaintiff's lone affidavit setting forth a common payment scheme may suffice. See Sultonmurodov, 2015 WL 9273948, at *2.

II.      The Motion for Conditional Certification is Denied

Defendant opposes the motion on the ground that Plaintiff's submission fails to sustain even the limited burden of proof necessary for notice of a collective action to be sent, arguing that Plaintiff is not similarly situated to the other putative FLSA collective members as a result of the arbitration agreements all of Defendant's employees signed. As set forth in Daniels' declaration, since its inception in July 2014, all of Cornucopia's employees, including Plaintiff, have signed arbitration agreements upon hiring, wherein they agree to arbitrate any claim or cause of action alleging improper or insufficient wages under the FLSA or any state or local wage and hour law. (Daniels Decl. ¶ 8.) Plaintiff, through the declaration of his counsel, acknowledges that he signed such an arbitration agreement ("Arbitration Agreement"). (Tantone Decl. ¶ 2, DE [35], and Ex. A, annexed thereto (DE [35-2].) Thus, there is no opposition to the allegation that all of Defendant's employees – since the company's inception – have executed arbitration agreements requiring that they arbitrate wage and hour disputes.

The procedural history with respect to the arbitrability of Plaintiff's claims is as follows: This action was commenced on February 13, 2019. On May 3, 2019, the parties stipulated to stay this action and proceed to binding arbitration in accordance with the Arbitration Agreement. (Id.) Plaintiff commenced arbitration through the American Arbitration Association ("AAA") on October 9, 2019. (Id. ¶ 3.) The arbitration never took place, however, due to Defendant's refusal to pay AAA the requisite fees. (Id.) As a result, AAA administratively closed the matter and permanently banned Cornucopia from using its services in the future. (Id. and DE [12-5].) Defendant asserts that it has since rectified its relationship

8

with AAA and has been expressly reinstated as a member, with AAA agreeing to arbitrate not only the claims of any putative class members, but Plaintiff's claims as well. (Def. Mem. of Law 1.) Indeed, Defendant has offered to proceed with the arbitration of Plaintiff's claims. Plaintiff has, however, declined that offer and seeks to continue this litigation.

Plaintiff argues that the arbitration agreements of all of Cornucopia's employees do not preclude conditional certification because such an argument pertains to the overall merits of the action, which is not what is under consideration at this preliminary stage. According to Plaintiff, the existence of arbitration agreements to which the putative collective members are bound "does not create any differences between the named-plaintiff and the proposed plaintiffs with respect to defendant's potential FLSA violations." (Pl. Reply Mem. of Law 3-4.)

There appear to be two schools of thought in this Circuit with respect to this issue. The first, permits notice of the collective action to be sent to putative class members "with the recognition that the agreements' enforceability will have to be determined at a later stage in the litigation." Geng v. Shu Han Ju Rest., No. 18-cv-12220, 2019 WL 4493429, at *14 (S.D.N.Y. Sept. 9, 2019); see also Romero v. La Revise Assoc., LLC, 968 F. Supp. 2d 639, 646-47 (S.D.N.Y. 2013) (finding the existence of an arbitration agreement "irrelevant" to collective action approval because it "raises a merits-based determination"); Hernandez v. Immortal Rise, Inc., No. 11 CV 4360, 2012 WL 4369746, at *5 (E.D.N.Y. Sept. 24, 2012) (same).

At least two courts in this circuit, however, have found that putative collective members who have signed binding arbitration agreements that cover their FLSA claims, like the putative collective members herein, are not similarly situated to the named plaintiff. See Errickson v. Paychex, Inc., 447 F. Supp. 3d 14, 27 (W.D.N.Y. 2020); Morganelli v. Chemed Corp., No. 10 Civ. 0876, 2010 WL 11622886, at *3 (E.D.N.Y. June 15, 2010). Those courts have denied

9

requests to send notices of the collective to all such employees, on the theory that those employees bound to arbitrate any FLSA claims are not similarly situated to the named plaintiff who may not be so bound. The Second Circuit has not spoken to the issue.

This Court holds that in certain circumstances, namely, where it is clear that members of the proposed collective are unquestionably bound to arbitrate any FLSA claims, they need not be sent notice of any right to opt-in to a collective. The facts here fall into such a situation and are additionally nuanced due to Plaintiff's particular situation. Like the members of the proposed collective, Plaintiff signed the Arbitration Agreement. However, the particular circumstances of this action – AAA closing Plaintiff's arbitration as a result of Defendant's failure to pay the requisite fees – has allowed him to pursue his matter in court. This is not the same with respect to the putative plaintiffs, who, all parties agree, are undoubtedly subject to arbitration agreements that encompass any wage and hour claims they may assert, and who have not proceeded to arbitration as of yet.

There may be many cases where the existence of collective-wide arbitration agreements is at issue. In such cases it would make sense to certify a collective and allow arbitrability to await the close of discovery or an interim motion to decertify the collective. However, where, as here, it is undisputed that arbitration agreements executed by all employees are valid and binding, in light of the fact that Defendant has been reinstated with AAA, Plaintiff fails to satisfy the "similarly situated" showing that he must meet. While Plaintiff is "technically correct" that at this stage of the litigation, the Court "considers only whether other employees are similarly situated as to the existence and application of a common practice or policy – as compared to their ability to recover on the merits or their means to do so – this nuance cannot save [these particular proposed plaintiffs]." Lin v. Everyday Beauty Amore Inc., No. 18-cv-

729, 2018 WL 6492741, at *4 (E.D.N.Y. Dec. 9, 2018). Here, where all of the putative plaintiffs are bound to arbitrate their wage and hour claims, "[i]t would waste everyone's time and resources to conditionally certify a group of individuals that the Court is virtually certain to decertify at step two . . .[;] not to mention the risk of confusion and subsequent disappointment of the employees who have signed . . . arbitration agreements[s]." Id. In addition, if the Court were to grant Plaintiff's motion for conditional certification, "it would likely precipitate an immediate motion by defendants to compel arbitration of these employees' claims on an individual basis." Id. Such motion practice "would forestall the collective action process and likely eliminate [the putative plaintiffs] from the collective anyway," all before even reaching the second step of the analysis. Id.

Accordingly, unlike Plaintiff herein, the putative plaintiffs "who signed arbitration agreements are subject to unique defenses that cannot be bifurcated or sub-classed away." Morganelli, 2010 WL 11622886, at *3. It would be a waste of resources to provide for collective action certification notices to be drafted and circulated to these individuals, only to have the collective undoubtedly de-certified at the next phase of the proceedings. As such, "it would be a disservice to judicial efficiency to certify all [of Defendants' delivery drivers], when those with arbitration agreements are subject to additional, prolonging motion practice which will likely disqualify them from the class." Id. (citation omitted). Put simply, "[o]pt-in plaintiffs who cannot bring suit in federal court are simply not situated with those who can." Id.

There is no dispute that the putative plaintiffs are subject to binding arbitration agreements. "That record is before the Court now and there is no benefit obtained by waiting until step two to decide this issue," in this particular action. Id. As such, the putative plaintiffs

11

are not similarly situated to the named Plaintiff herein. Rather, any wage and hour claims they may have must be arbitrated on an individual basis, and they cannot join this action.

In sum, allowing Plaintiff to certify a collective which includes such individuals would only prolong this matter by encouraging extended motion practice. Such practice would delay adjudication of the claim of the only individual employee who, under the present circumstances, is in a position to pursue his claim in court – the individual Plaintiff. Accordingly, Plaintiff's motion for conditional certification of a collective action is denied. This case shall proceed as a single-plaintiff action only.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for conditional certification of a collective action is denied.

**SO ORDERED:**

Dated: Central Islip, New York
August 20, 2021

      /s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge